## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 20-20061-JAR-1 |
| CESAR CARRASCO-CARRASCO, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the government's Motion to Review Release

Order (Doc. 13). The government requests that the Court review Magistrate Judge Gwynne E.

Birzer's order releasing Defendant Cesar Carrasco-Carrasco from custody pending trial. The

Court heard argument from the parties on December 16, 2020. Having fully considered the

briefs and the parties' argument, the Court is prepared to rule. For the reasons explained below,

the Court denies the government's motion.

### I.      Background

This case arose from a traffic stop on January 29, 2020, in Kansas City, Kansas. During

the traffic stop, Carrasco, a citizen of Mexico, told police officers that he did not have a driver's

license, that he possessed a firearm, and that he was illegally present in the United States.

Officers also found drug paraphernalia, including a glass pipe with suspected methamphetamine

residue and small baggies. Carrasco was taken into custody without further incident. On April

30, 2020, Carrasco was convicted of criminal possession of a firearm under state law.

On September 23, 2020, a grand jury sitting in the District of Kansas returned a single-

count indictment, charging Carrasco with illegally reentering the United States following

conviction of a felony, in violation of 8 U.S.C. § 1326(a) and (b)(1). An arrest warrant was

issued the same day.  Following his arrest on October 26, 2020, Carrasco entered his initial

appearance in this Court.  During that appearance, the government made an oral motion for

detention pursuant to 18 U.S.C. § 3142(f).  After hearing evidence and argument, Judge Birzer

denied the government's motion, concluding that the government failed to prove that Carrasco

was a flight risk or a danger to the community.  Judge Birzer ordered Carrasco released on

conditions.  The government promptly moved to stay and appeal Judge Birzer's order pursuant to

18 U.S.C. § 3145(a)(1).

## II.    Legal Standard

"If a person is ordered released by a magistrate judge . . . the attorney for the Government

may file, with the court having original jurisdiction over the offense, a motion for revocation of

the order."[1]  This Court's review of a magistrate judge's decision to detain or release a defendant

is *de novo*.[2]  A district court must "make its own determination if pretrial detention is proper or

set conditions of release" and "ultimately decide the propriety of detention without deference to

the magistrate judge's conclusion."[3]  *De novo* review does not require a *de novo* evidentiary

hearing.[4]  In this case, the Court's ruling relies on the evidence and arguments presented by the

parties during the detention hearing before Judge Birzer and in the briefs, the transcript of the

detention hearing before Judge Birzer, and the Pretrial Services Report.

Under the Bail Reform Act of 1984, the court must order an accused's pretrial release,

with or without conditions, unless it "finds that no condition or combination of conditions will

---

[1] 18 U.S.C. § 3145(a)(1).

[2] *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

[3] *United States v. McNeal*, 960 F. Supp. 245, 246 (D. Kan. 1997) (citing *United States v. Carlos*, 777 F. Supp. 858, 859 (D. Kan. 1991); *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990); *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987)).

[4] *United States v. Lutz*, 207 F. Supp 2d 1247, 1251 (D. Kan. 2002).

reasonably assure the appearance of the person as required and the safety of any other person and the community."[5]  In making this determination, the court considers the factors found in 18 U.S.C. § 3142(g): (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[6]

## III.    Discussion

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."[7]  Under the Bail Reform Act, the government may move for detention only under the circumstances specified in § 3142(f): (1) if the defendant has been charged with certain enumerated offenses in § 3142(f)(1); (2) "in a case that involves . . . a serious risk that such person will flee"[8]; or (3) "in a case that involves . . . a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."[9]

In this case, the government concedes that Carrasco is not charged with an offense under § 3142(f)(1) and does not allege that he will attempt to obstruct justice or intimidate a witness or

---

[5] 18 U.S.C. § 3142(e)(1).

[6] *Id.* § 3142(g).

[7] *United States v. Salerno*, 481 U.S. 739, 755 (1987).

[8] 18 U.S.C. § 3142(f)(2)(A).

[9] *Id.* § 3142(f)(2)(B).

juror.  Thus, the government's motion must be grounded in § 3142(f)(2)(A).  The government

bears the burden of proving risk of flight by a preponderance of the evidence.[10]  In determining

whether the government has met its burden, courts examine the § 3142(g) factors, because "[t]hat

preponderance must, of course, go to the ultimate issue: that no combination of conditions . . .

can 'reasonably' assure that the defendant will appear for trial."[11]

### A.      Nature and Circumstances of the Offense

Here, the indictment charges Carrasco with illegal reentry, in violation of 8 U.S.C.

§ 1326(a) and (b)(1).  The government highlights that at the time of arrest Carrasco possessed a

firearm as well as a glass pipe with suspected methamphetamine residue and small baggies.

While troubling, Carrasco was compliant with the officers, advising them that he had the firearm.

At no point did Carrasco use, or threaten to use, the firearm.  Moreover, Carrasco admitted to the

officers that he uses methamphetamine, and the drug paraphernalia the officers recovered,

without more, is consistent with personal use—not, as the government suggests, distribution.

The government states that Carrasco told officers he carried the firearm for protection, and it

contends that this statement is further indicative of drug trafficking.  Without any evidence

suggesting Carrasco engaged in drug trafficking, however, the Court cannot conclude that the

government's allegation rises above speculation.  This factor thus slightly favors release.

### B.      Weight of the Evidence

Carrasco, a citizen of Mexico, admitted to officers at the time of arrest that he is present

in the United States unlawfully.  According to the Pretrial Services Report, Carrasco was

---

[10] *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

[11] *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam); *see also United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986) ("Judicial officers making risk of flight determinations are guided by the factors set forth in Section 3142(g), including the nature and circumstances of the offense charged, the weight of the evidence against the person, and the history and characteristics of the defendant.").

previously deported in 1994 and in 2003.  Thus, the evidence against Carrasco in this case is

strong.  Although a strong case may create some incentive to flee, this factor has been deemed

"the least important of the various factors" because, "if the court impermissibly makes a

preliminary determination of guilt, the refusal to grant release could become in substance a

matter of punishment."[12]

### C.      Danger to the Community

Though the government seeks pretrial detention under 18 U.S.C. § 3142(f)(2)(A), it also

argues for Carrasco's detention because he is a danger to the community.  It is unclear whether a

defendant may be detained as a danger to the community where the government moves for

pretrial detention under § 3142(f)(2)(A).[13]  But the Court need not answer this question today,

because even if the Bail Reform Act permits detention on the basis of dangerousness where the

government seeks pretrial detention under § 3142(f)(2)(A), the Court finds that this factor

counsels in favor of Carrasco's pretrial release.

The government bears the burden of proving that no condition or set of conditions will

ensure the safety of the community by clear and convincing evidence.[14]  The government asserts

that the firearm and drug paraphernalia recovered during Carrasco's arrest indicate he is a danger

to the community.  The government again speculates that Carrasco's statement to the officers

that he carried the firearm for protection suggests he is "still engaged in the type of dangerous

---

[12] *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

[13] *Compare Himler*, 797 F.2d at 159–60 (holding that detention in a § 3142(f)(2)(A) case cannot be based on danger to the community); *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) (same); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 967 (E.D. Wis. 2008) (same), *with United States v. Holmes*, 438 F. Supp. 2d 1340, 1348–50 (S.D. Fla. 2005) (finding that § 3142(f) limits only when a detention hearing may be held, not the bases for detention).

[14] 18 U.S.C. § 3142(f).

activity reflected in his criminal history."[15]  There is no evidence to support the government's

assertion.  Moreover, the criminal history the government refers to dates back to the early 1990s.

Though that history is concerning, Carrasco committed those offenses at the ages of eighteen and

nineteen, and his criminal history reflects no "dangerous activity" since then.  Today, Carrasco is

forty-five years old.  Accordingly, the Court cannot find by clear and convincing evidence that

Carrasco is a danger to the community, and this factor weighs in favor of pretrial release.

### D. History and Characteristics of the Defendant

In assessing Carrasco's history and characteristics, § 3142(g) directs the Court to

examine, among other things, his family ties, employment, financial resources, length of

residence in the community, community ties, past conduct, history relating to drug or alcohol

abuse, physical and mental condition, criminal history, and record concerning appearance at

court proceedings.  Courts typically look at these factors to assess a defendant's risk of flight.[16]

Carrasco has strong family ties in both the United States and Mexico.  His wife, children,

and brother reside in Mexico, while he lives with his mother in the United States.  Further, his

length of residence in the community and his community ties are considerable.  Carrasco alleges

that he has lived in the United States since the age of five.  While he is unable to document this

early arrival, the government is aware of his presence in the United States since at least 1990,

and there is evidence indicating that Carrasco attended middle school and high school in Kansas

City, Kansas, though he did not graduate high school.  There is documentary evidence that

Carrasco has resided with his mother at the same address in Kansas City, Kansas for over

twenty-five years, and he intends to reside in his childhood home with his mother upon release.

---

[15] Doc. 15 at 6.

[16] *United States v. Abdullahu*, 488 F. Supp. 2d 433, 439 (D.N.J. 2007).

Prior to his arrest, Carrasco reports that he was employed in Kansas City, Kansas, and he believes he could return to work if released on bond.  Carrasco also owns a vehicle.

There is no evidence indicating that Carrasco has any physical or mental health conditions.  As noted above, he admitted to officers that he uses methamphetamine, though he did not report any methamphetamine use to Pretrial Services.  Carrasco reports that he last used cannabinoids three years ago and alcohol ten months ago.

Carrasco's criminal history discloses that he was previously deported to Mexico in 1994 and 2003.  Further, between the ages of seventeen and eighteen, Carrasco was convicted of the following offenses: criminal damage to property and criminal trespass in 1992; obstructing an officer and possession of a deadly weapon in 1993; burglary, theft, and possession of a concealed weapon in 1993; and burglary and theft in 1993.  Since 1993, save for a conviction in 2015 for operating a motor vehicle without a valid license, Carrasco's criminal record shows no arrests or convictions until his arrest in this case.  There is no indication that Carrasco ever failed to appear in court.

The Court finds that the government has not carried its burden of proving by a preponderance of the evidence that Carrasco presents a flight risk.  While he has family in Mexico, Carrasco has lived in his childhood home with his mother in Kansas City, Kansas for over twenty-five years.[17]  Carrasco's strong tie to his mother, his length of residence in the community, his community ties, his employment history, his dated criminal record, and his history of appearing in court, indicate that he does not present a flight risk.  And as Magistrate

---

[17] *See United States v. Garcia-Gallardo*, No. 09-20005, 2009 WL 113412, at *2 (D. Kan. Jan. 15, 2009) (finding that strong family ties in the United States provided some assurance that the defendant would not flee if released to live with his family even though the defendant also had strong family ties in Mexico).

Judge Birzer put it, despite his prior deportations to Mexico, Carrasco "keep[s] coming back."[18]

The government does note some circumstances suggesting caution, including Carrasco's prior

record, though dated, as well as his drug use and firearm possession.  But none of these

circumstances suggest Carrasco is likely to flee.  Ultimately, "[s]ection 3142 does not seek

ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a

defendant's appearance cannot be read to require guarantees against flight."[19]

For the foregoing reasons, the Court finds that Carrasco should be released.  The

government has not met its burden of showing that no conditions of release will reasonably

assure Carrasco's appearance and the safety of the community.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's Motion to

Review Release Order (Doc. 13) is **denied**.

**IT IS FURTHER ORDERED** that Defendant Cesar Carrasco-Carrasco shall be released

subject to the following conditions:

1. Defendant must submit to supervision and report for supervision as directed by
   Pretrial Services.

2. Defendant must surrender any passport to the Clerk, United States District Court.

3. Defendant must not obtain a passport or other international travel document.

4. Defendant must abide by the following restrictions on personal association, residence,
   or travel: travel is restricted to the Kansas City metropolitan area.  All other travel
   must be approved in advance by the Pretrial Services Office.

5. Defendant must not possess a firearm, destructive device, or other weapon.

---

[18] Doc. 16 at 11.

[19] *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992).

8

6.  Defendant must not use alcohol at all.

7.  Defendant must not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

8.  Defendant must submit to testing for a prohibited substance if required by the Pretrial Services Office or Supervising Officer.  Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.  Defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

9.  Defendant must report as soon as possible to the Pretrial Services Office or Supervising Officer every contact with law enforcement personnel, including arrests, questioning, or stops.

10. Defendant must pay a co-pay, at the discretion of the Pretrial Services Officer, for any and all services provided to him during the term of supervision.

**IT IS SO ORDERED.**

Dated: December 22, 2020

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> CHIEF UNITED STATES DISTRICT JUDGE